IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 14-00291-CG-N |
| | ) | |
| KIMBERLY SMITH HASTIE, | ) | |
| RAMONA MCARDLE YEAGER, | ) | |
| and JOHN MELVIN HASTIE, Jr., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

This matter is before the Court on two motions *in limine*. (Docs. 158, 163). The Government filed a motion *in limine* that addresses the admissibility of statutorily regulated disbursements of government proceeds by the Mobile County License Commission (Docs. 158), and Defendant Hastie responded. (Doc. 166). Defendant Hastie filed a motion *in limine* that addresses the expert testimony of Hugh R. Evans III, General Counsel of the Alabama Ethics Commission. (Docs. 163). The Government responded to that motion (Doc. 167), and Defendant Hastie replied. (Doc. 170). For the reasons set forth below, the Government's motion is due to be DENIED, and Defendant Hastie's motion is due to be GRANTED in part and DENIED in part.

## BACKGROUND

A grand jury indicted defendants Kimberly Hastie and Ramona Yeager on nine counts related to an alleged conspiracy "to trick and deceive the County Commission and the citizens of Mobile County by falsifying invoices and

misappropriating funds." (Doc. 1, pp. 4). Hastie is the Mobile County License Commissioner (Doc. 1, p. 2), and Yeager is the Mobile County Deputy License Commissioner. (Doc. 1, p. 3). The charges against Hastie and Yeager include one count of conspiracy (18 U.S.C. § 1349), five counts of wire fraud (18 U.S.C. § 1343), and three counts of mail fraud (18 U.S.C. § 1341). (Doc. 1, pp. 3 – 12).

The same indictment charged Hastie with six counts related to Hobbs Act Extortion under Color of Official Right (18 U.S.C. § 1951(a)), and one count of making a false statement to a Federal Bureau of Investigation agent regarding activities at the License Commission (18 U.S.C. § 1001) (Doc. 1, pp. 13 – 15). The Government later filed a superseding indictment, in which a grand jury indicted Hastie on an additional count: prohibited release and use of personal information from state motor vehicle records (18 U.S.C. § 2721(a)) (Doc. 45, pp. 15 – 17). The superseding indictment also charged Defendant Hastie and her spouse, John Melvin Hastie Jr., with an additional count of conspiracy to defraud the United States. (Doc. 45, p. 18). That count was later severed from this case, and is proceeding separately to trial. (Docs. 121, 171). The parties now ask the Court to determine the admissibility of certain evidentiary matters before trial.

## ANALYSIS

A motion *in limine* allows the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). A court should only grant a motion *in limine* when the evidence at issue is clearly inadmissible on all potential

grounds. Courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. See United States v. Posner, 594 F. Supp. 923, 925 (S.D. Fla. 1984) aff'd, 764 F.2d 1535 (11th Cir. 1985). Further, a court's ruling regarding a motion *in limine* is subject to change when the case unfolds, particularly if the actual testimony differs from what was expected. Luce v. United States, 469 U.S. 38, 41 (1984).

**A. License Commission Disbursements of Government Proceeds**

The Government asks the Court to "exclude at trial extrinsic evidence which the defendants may attempt to rely upon as good character evidence, namely, statutorily-regulated disbursements of government proceeds by the Mobile County License Commission." (Doc. 158, p. 1). In accordance with state law, the License Commission must disburse certain funds to schools, fire districts, and hospitals. (Doc. 158, pp. 1 – 2). The Government argues "extrinsic evidence of disbursements by the License Commission of proceeds regulated completely by statute in furtherance of good character evidence is not relevant to a fact of consequence at trial and would be improper bolstering evidence." (Doc. 158, p. 2).

In her response, Defendant Hastie confirms that she "did provide the Government with schedules of receipts and disbursements made by the License Commission." (Doc. 166, p. 1). She further argues that the schedules are not intended for use as evidence of good acts. Instead, she argues the evidence is "for other proper and relevant purposes." (Doc. 166, p. 1). Defendant Hastie does not further explain what "other proper and relevant purposes" she may have in mind

for these disbursements.

The Government does not cite any evidentiary rules in its motion, so the Court turns to Rules 401, 403, and 404. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action. FED. R. EVID. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence. FED. R. EVID. 403. Additionally, Federal Rule of Evidence 404 codifies the familiar rules governing the use of character evidence in criminal and civil trials. In general, the prosecution may not present evidence of the bad character of the accused unless and until the accused presents evidence of good character. The accused may always introduce evidence of "pertinent" traits of her character, however, thereby opening the door to cross-examination and rebuttal on those traits. FED. R. EVID. 404(a)(2).

In this case, the Court first considers whether the disbursements are relevant in accordance with Rule 401. Among other things, this case is about payments Defendants made to other parties while working at the License Commission. The evidence the Government seeks to exclude relates to payments Defendants made to other parties while working at the License Commission. Defendant Hastie states she "may" introduce this evidence if the payments are determined relevant during the course of trial as part of her case-in-chief. (Doc. 166, p. 1). The Court finds

License Commission payments made in accordance with state law could be relevant for this trial. The evidence, therefore, is likely admissible under Rule 401.

Next, the Court considers whether the probative value of this evidence substantially outweighs any of the dangers specified in Rule 403. Defendant Hastie does not explain how she intends to use this evidence. As the Government acknowledges "the jury will benefit from a discussion of the responsibilities of the County Commission, License Commission, License Commissioner, and Deputy License Commissioner." (Doc. 158, p. 2). This discussion may need to include information on certain payments the License Commission is obligated to make in accordance with state law. It is not apparent that the evidence at issue will necessarily mislead or confuse the jury, or cause undue delay. As a result, the Court finds it is likely admissible under Rule 403.

Finally, it is not clear that Defendant Hastie seeks to use the payments for "good character evidence" as the Government suggests. Indeed, Defendant Hastie attests that this is not her intent. Furthermore, Defendants in criminal cases are allowed to offer evidence of pertinent traits under Rule 404(a)(2). The Government may then rebut that evidence. In sum, the Court finds no reason at this stage to grant the Government's motion *in limine* concerning the payments the License Commission made as required by statute. (Doc. 158). The Government may renew its objections at trial should Defendant Hastie offer this evidence for an improper purpose. The Government's motion (Doc. 158) is therefore DENIED.

**B. Testimony of Alabama Ethics Commission General Counsel**

The Government filed notice that it intends to call Hugh R. Evans, III, General Counsel of the Alabama Ethics Commission, as an expert witness at trial. (Doc. 149). The Government stated that it may elicit testimony from Mr. Evans "on matters concerning Alabama state ethics law, such as the Code of Ethics for Public Officials, Employees, Etc. and Statement of Economic Interests Forms." (Doc. 149, p. 1). The Government provided Mr. Evans' resume, and a written summary of his expected testimony to Defendants. (Doc. 163, Exh. 1). The written summary of testimony describes what Mr. Evans plans to discuss, and states he "will likely opine that as License Commissioner, Defendants Kim Hastie and Ramona Yeager engaged in various acts in violation of Alabama ethics statutes." (Doc. 163, Exh. 1, p. 1).

Defendant Hastie seeks to exclude Mr. Evans' testimony because he "has no first-hand knowledge of the present case or Mrs. Hastie's alleged conduct and the summary gives no factual bases for Mr. Evans's opinions." (Doc. 163, p. 3). The Government responded and argued only lay witnesses require first-hand knowledge in order to testify. (Doc. 167, p. 1). In contrast, expert witnesses may base their opinions on "facts or data" in the case. (Doc. 167, p. 1). The Government further argues, "Evans's testimony on whether Hastie contravened various Alabama state ethics laws would tend to make more probable the mens rea of the charged offenses." (Doc. 167, p. 4). The Government also relies on two civil cases to show the "Alabama Ethics Commission has been involved in federal cases involving ethics issues in Alabama" (Doc. 167, p. 3).

In her reply, Defendant Hastie argues Rules 404(b) and 704(b) prohibit Mr. Evans's testimony regarding Hastie's mental conditions. (Doc. 170, p. 5). Hastie further points out that one of the two cases on which the Government relies for its position involved the Ethics Commission as a named defendant, and the other involved the State of Alabama being sued under the Voting Rights Act. (Doc. 170, p. 6). Thus, the civil cases are not related to the facts of this criminal case.

### 1. Mr. Evans may not offer legal conclusions

The Court finds Mr. Evans' testimony must be limited for the following reasons. First, as the Government notes, the Court has previously permitted evidence of state economic interest *forms* in public corruption trials. (Doc. 167, p. 2). Forms, however, are not synonymous with testimony. Thus, this is not a sufficient basis for admitting all of Mr. Evans's testimony in this case.

Second, the Court finds that Mr. Evans's opinion on whether Defendants violated Alabama ethics statutes does not satisfy the requirements for admissibility under Rule 702 because it is not helpful for the jury. A district court must engage in a "rigorous three-part inquiry" to determine the admissibility of expert testimony under Rule 702. Trial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Augustin, 661 F.3d 1105, 1125 (11th Cir. 2011). These requirements are known as the "qualifications," "reliability," and "helpfulness" prongs. United States v. Frazier, 387 F.3d 1244, 1296 (11th Cir. 2004).

Experts may satisfy the "qualifications" prong in various ways. Id. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. The plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." The Rule 702 Advisory Committee Notes also explain, "Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony." FED. R. EVID 702. advisory committee's note (2000 amends.). In this case, the parties do not challenge Mr. Evans's qualifications, and the Court finds Mr. Evans is qualified as an expert witness.

Of course, the observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation for any conceivable opinion the expert may express. The "reliability" and "helpfulness" criteria remain discrete, independent, and important requirements for admissibility. Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341, 1347 (11th Cir. 2003). For the "reliability" prong, "the proponent of the testimony does not have the burden of proving that it is scientifically correct," but must establish "by a preponderance of the evidence, it is reliable." Allison v. McGhan

Medical Corp., 184 F.3d 1300, 1312 (11th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)). The question of whether an expert's testimony is reliable depends on the facts and circumstances of the particular case. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999)). Factors that may be useful in determining reliability include:

> (1) whether the theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) in the case of a particular ... technique, the known or potential rate of error, and (4) whether the theory or technique is generally accepted by the relevant ... community.

Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1194 (11th Cir. 2010) (internal quotation marks and alterations omitted).

For the "helpfulness" prong, the court considers whether the expert testimony concerns matters that are beyond the understanding of the average layperson. See United States v. Rouco, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"). Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. Frazier, 387 F.3d at 1262-63. Although an expert may testify as to his opinion on an ultimate issue of fact, in a criminal case, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FED. R. EVID. 704(b). "Those matters are for the trier of fact alone." Id.

Additionally, an expert may not testify about the legal outcomes or implications of certain conduct, which may include "legal opinions" and "legal conclusions." Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1112, n. 8 (11th Cir. 2005) (noting courts "must remain vigilant against the admission of legal conclusions, and an expert witness may not substitute for the court in charging the jury regarding the applicable law") (citations and quotations omitted); see also Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (an expert may not offer an opinion about the scope of an insurer's duty under an insurance policy because "[t]his [i]s a legal conclusion"). Merely telling the jury what result to reach is unhelpful and inappropriate. Montgomery, 898 F.2d at 1541.

In this case, the Court concludes Mr. Evans may speak about his responsibilities at the Ethics Commission, the scope and nature of various Alabama state ethics laws, the rules and procedures for the filing of Statement of Economic Interests forms, and ethics guidelines for public officials and employees. The Court also concludes Mr. Evans may not offer his opinion on whether Defendants violated state ethics laws. That is not helpful to a trier of fact, and is essentially a legal conclusion. Thus Mr. Evans may make factual statements about the forms at issue. Mr. Evans may not make legal statements or offer conclusions as to whether Defendants violated Alabama ethics law or acted with the intent to defraud.

**2. Mr. Evans' Testimony is Limited to the Trial for Count 18**

Hastie also seeks to exclude this evidence under Rule 404(b). Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, evidence of criminal activity other than the charged offense is not extrinsic under Rule 404(b) if it is (1) an uncharged offense that arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. United States v. McLean, 138 F.3d 1398, 1403 (11th Cir. 1998).

The Court finds Rule 404(b) does not prohibit testimony concerning the ethics forms as it pertains to Count Eighteen. For Count Eighteen, the superseding indictment alleges Hastie "submitted two false Statement of Economic Interests forms to the Alabama Ethics Commission." (Doc. 45, p. 18). The forms are necessary to complete the story of the alleged crime ("Klein Conspiracy"), and the alleged false state forms arose out of the same transaction as the alleged false federal forms (*i.e.*, the same sale of land). Count Eighteen, however, is severed from Counts One through Seventeen. (Doc. 121). Count Eighteen alleges tax evasion by a married couple. Count Eighteen arose from a different set of facts, and involves a different defendant (John Hastie Jr.) who does not work at the Mobile County License Commission. Count Eighteen does not relate directly to Counts One through Seventeen.

11

Nevertheless, the Government argues that Evans's testimony is also relevant to Counts One through Seventeen because "Hastie is an elected public official who faces public corruption charges." (Doc. 167, p. 2). "While there is no federal statute aimed specifically at state and local corruption, the United States frequently relies upon the mail and wire fraud statutes and the Hobbs Act to prosecute state and local officials for corruption." (Doc. 167, pp. 2 – 3). Evans, the Government states, will thus "provide context to Hastie's malfeasance in public office." (Doc. 167, p. 3).

These general allegations of wrongdoing do not suffice to bring Mr. Evans's testimony within the scope of permissible uses under Rule 404(b). Simply because Hastie is accused of submitting false Statement of Economic Interests Forms to the Alabama Ethics Commission does not make this evidence "inextricably intertwined" with the charges against her in her role as License Commissioner, nor is it necessary to complete the story of the other alleged crimes. As explained in the Court's Order severing Count Eighteen:

> The indictment does not indicate Hastie and Hastie Jr. committed the alleged tax offenses in furtherance of the alleged conspiracy at the License Commission. Simply put, Hastie Jr.'s land transaction does not involve the License Commission, Hastie's job as License Commissioner, Hastie seeking personal gain from her position of office, or the alleged conspiracy that took place in the License Commission office from July 2012 until July 2014. The Court further concludes filing disclosure statements as an elected official is merely a corollary to the alleged tax evasion, and the disclosure statements alone do not bring Count Eighteen into the scope of the alleged conspiracy at the License Commission. (Doc. 121, pp. 6 – 7).

Accordingly, Mr. Evans's testimony is excluded from the trial for Counts One through Seventeen as required under Rule 404(b). Defendant Hastie's motion *in limine* is therefore GRANTED in part and DENIED in part.

## CONCLUSION

In light of the foregoing, the Government's motion *in limine* to exclude extrinsic evidence of statutorily-regulated disbursements made by license commission (Doc. 158) is **DENIED**. Defendant Hastie's motion *in limine* regarding the testimony of Hugh R. Evans, III (Doc. 163) is **GRANTED IN PART and DENIED IN PART.**

**DONE and ORDERED** this 22nd day of April, 2015.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE