IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR-14-291 CG |
| | ) | |
| RAMONA YEAGER | ) | |
|     Defendant | ) | |

## **MOTION FOR JUDGMENT OF ACQUITTAL**

COMES NOW, Defendant RAMONA YEAGER, (herein after, "Yeager") by and through undersigned counsel Jason Darley, and Dennis J. Knizely, and moves this Honorable Court to grant judgment of acquittal on all counts as to Yeager pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

A motion for Judgment of Acquittal under rule 29(c) "[T}ests the sufficiency of the evidence against defendant, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of guilt." 2A Charles A. Wright & Peter J. Henning, Federal Practice & Procedure: Criminal Sec. 461 (4th Ed. 2010). Under Rule 29(c), "[A] district court should apply the same standard used in reviewing the sufficiency of the evidence to sustain a conviction." U.S. v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999).  This means a "[V]erdict of guilty must stand if there is substantial evidence to support it." U.S. v. Toler., 144 F.3d 1423, 1428 (11th Cir. 1998) (contrasting the Circuit's earlier incorrect view that only **slight evidence** was needed to support a conspiracy conviction)(emphasis added). Any conflicts in the evidence are resolved in favor of the Government, and all inferences that tend to support the Government's case must be accepted. See Ward, 197 F.3d at 1079.  However, where the Government relies on circumstantial evidence, "reasonable inferences rather than mere speculation, must support conviction." U.S. v. Suttles, 297 F. App'x 887, 888 (11th Cir.2008).  In ruling on the motion for judgment of acquittal the Court is to determine "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." Ward, 197 F.3d 1291, 1296-1297 (11th Cir. 2007).

Count 1:

Count one (conspiracy) alleged that from on or about July 2012 through July 2014, Ramona Yeager willfully and **knowingly** conspired with Kim Hastie, (herein after "Hastie") in violation of 18 USC 1349, to trick and deceive the Mobile County Commission by falsifying invoices and misappropriating funds to obtain political lobby and consulting services and personal benefits without the knowledge and oversight of the County Commission at the expense of the Mobile County taxpayer dollars.

Counts 2 thru 6:

Counts two through six (wire fraud) allege that from on or about February 2014 to July 2014, Yeager and/or Hastie, willfully and **knowingly**, in furtherance of the scheme to defraud Mobile County, to cause emails to be sent in violation of 18 U.S.C 1343. Counts 2-6 each correspond with a single, respective email.

Counts 7 thru 9:

Counts seven through nine (mail fraud) allege that from on or about February 2014 to July 2014, Yeager and/or Hastie, willfully and **knowingly**, in furtherance of the scheme to defraud Mobile County, to cause payments to be sent via mail in violation of 18 U.S.C. 1341, with the payment checks being caused to be sent through the mail. Counts 7-9 each correspond with a single, respective mailing.

The Government alleges the objective of the conspiracy was to obtain political lobbying and consulting services and personal benefits.

Each of these counts require the element the Yeager either knowingly conspired with Hastie and/or then knowingly participated in the acts that comprised the violation(s) of 18 U.S.C. Sections 1343 and 1341. This necessitates a specific intent analysis. "Specific intent requires a showing that Defendant intended the proscribed outcome as his purpose." United States v. Dyer, F.3d 520 1st Cir, 2009).

**Knowledge/Intent:**

First and foremost, it is of great relevance based on allegations in the indictment and at trial, that **Yeager was not even promoted to Deputy License Commissioner until March 2014** (See. P. 3,

Superseding Indictment (filed on January 29, 2015), almost a month and a half into the employment of Strateco, inc., by Hastie). Chad Tucker testified Monday June 1, 2015, that at the time Stratego was retained by Hastie (prior to Yeager's promotion), no political campaign was taking place, and that all invoices submitted by his company were fair, accurate and not fraudulent, and not politically related, rather they were to inform the public. Yeager's factual involvement in these matters was testified to as such:

Regarding the mechanics of his billing, Victor Crawford testified:

> A. I sum it together and make up the invoice for it and put a copy of her time, what she has turned in as her time, with the invoice with my time and submit it all to Ms. Ramona Yeager.
>
> Q. What does Ms. Ramona Yeager do with it?
>
> A. She checks and validates it.
>
> Q. So if there's a specific task, then she'll look back at the records you have submitted?
>
> A. Yes.

(Part 1, p.43 of Victor Crawford's direct examination).

Further:

> Q. What was the next contact you had with regard to these invoices that you had received?
>
> A. On April 15th -- I don't know -- about 12:45, just before 1:00 o'clock, Ramona Yeager came in my office, stood before me, and said, "You haven't been billing me your expenses. You need to bill your expenses. Mrs. Hastie wants you to bill your expenses. Are you going to bill your expenses like Ms. Hastie wants."

(Part 1, p.80 of Victor Crawford's direct examination).

The most significant inference of any wrongdoing whatsoever on the part of Yeager would be this snippet of one of the Government's exhibits.

> MS. YEAGER: I don't want to him think we're trying to do something underhanded or it may bring attention to that Strateco or whatever. I'm going to ask Ms. Hastie.

Audio From Govt's Ex 150B p,122

The beginning of the statement Yeager directly addresses not wanting anything taken as underhanded. Taking this in the light most favorable to the government and their case, this is simply a bare statement that Yeager did not want to bring attention to Strateco, however it is only a snippet and not complete in context or tone, but this is somewhat evidenced by the transcript of the Government's next Exhibit:

>MR. CRAWFORD: Okay. So basically you are going to ask Ms. Hastie if --
>
>MS. YEAGER: If she wants to resubmit.
>
>MR. CRAWFORD: Pull it and resubmit or –
>
>MR. CRAWFORD: All right.
>
>MS. YEAGER: Did you pay the people?
>
>MR. CRAWFORD: No. They got paid. I ain't got paid
>
>MS. YEAGER: In other words, they don't get paid until you get paid So she wants them to have the first and the second one and get it in on there.
>
>MS. YEAGER: Just -- see, the only way I got involved with it was because she didn't like it because it had Kim Hastie and worked on this.
>
>MR. CRAWFORD: Okay. I'm just holding up turning in my invoice, trying to see if I'm expected -- if I should expect another one. I just don't know. I just need some direction. If not, I'll turn in my invoice and get paid. That's all.
>
>MS. YEAGER: They haven't sent me anything.
>
>MR. CRAWFORD: Okay.
>
>MS. YEAGER: We were supposed to have a meeting with them today [inaudible]. Do you want me to call them?
>
>MR. CRAWFORD: If you want to.
>
>MS. YEAGER: 581-9481 -- wait. [Inaudible].
>
>MS. YEAGER: Well, we had a meeting. And the next meeting, they had a different guy that they just hired. I don't know who these people are. Not answering.

(Audio of Govt's Ex 153A Part 1 of transcript, p.144-148)

However, on cross-examination, this was fleshed out and Yeager's lack of knowledge and workings of the entire process was demonstrated:

>MS. YEAGER: Well, Ms. Hastie had them change it.

MR. CRAWFORD: Okay. So I'm just wondering May just completed and was I going -- I just need some direction. Was I going to get something from May? If not, I'll go ahead and make my bill and do my invoice for my time and have that ready for you by, I guess, Monday now. That's all. You can let me know.

MS. YEAGER: See -- the only way I got involved with it is because she didn't like it because they had "Kim Hastie" and the wording on this.

MR. CRAWFORD: Okay. [End of recording.]

BY MR. KNIZLEY:

Q. Mr. Crawford, Ramona is telling you there that her involvement is because Ms. Hastie didn't like the wording on the bill?

A. Yes, she's saying it

Q. And she's saying that's the only way she got involved in it?

A. Yes

Q. She doesn't mention anything about the substance of what was for but simply the bill and the wording?

A. That's correct.

Q. And would that be consistent with what her job was while you've been there, look at the bill, make sure the bill is correct, mathematics, arithmetic, make sure that's done, forward it on to Ms. Hastie for her signature before going onto the County?

A. Yes.

Q. Is that fairly consistent with what Ramona does in relation to your bill?

A. Yes. That's fairly consistent with what she does in relation to my bill, yes.

Part. 2 of Court record of examination of Victor Crawford, p.203-204 (pages 183-207 are being attached to this motion as "Exhibit A".

It is clear from the trial up to this point, the parts of the record taken above, and attached, and from Victor Crawford's own testimony that Yeager simply was involved in the checking of math on Crawford's bills, that she possessed no knowledge of any scheme, if one existed, nor was she privy to the process and procedure of approving contracts with the Mobile County Commission. As to knowledge, Yeager, unknown that she was being recorded, was genuinely evidenced as to the parties in the invoices and where the bills were generated. For analysis of her knowledge and intent to commit these crimes, the

jury would have had to be presented knowledge that Yeager has knowledge of the process and procedure of contract procurement. The jury would have to have been shown evidence that Yeager knew of a plan, if any, by Hastie to conceal payment, rather than simply pay the invoices from other accounts. Further, there has been no evidence of any personal benefit or motive on the part of Yeager to participate in any scheme.

Simple presence with others in the License Commission office, or even a relationship to Hastie as a close, subordinate employee is not enough to supply more than bare knowledge. "It is not a crime to be acquainted with criminals or to be physically present when they are committing crimes." United States v. Herrera-Gonzalez, 263 F.3d 1092, 1095 (9th Cir. 2001). Furthermore, "[G]uilt of a conspiracy cannot be proven solely by family relationship or other type of close association." United States v. Ritz, 548 F.2d 510, 522 (5th Cir. 1977).

There is no substantial evidence in the record that Ramona Yeager knew of any conspiratorial agreement between anyone, or any illicit conduct, nor is there substantial evidence offered that she joined in any conspiratorial agreement with specific intent. In U.S. v. Belt, 574 F.2d 1234, 1239-1240 (5th Cir.1978) the Court made clear that merely setting up an arrangement that made the criminal acts of the principal possible does not alone support a conclusion that the defendant was a aware of the criminal nature, if any, of the principal's acts. Belt was a union official charged with improperly converting union funds for personal benefit. The national union disbursed a lump sum strike fund to the local union, which was then to make distributions from the funds to those striking. Belt arranged with a local store to allow another to cash checks made out to strikers. The checks were made out to persons who were not strikers and another cashed the check and kept the money.

> The proof that Belt arranged for the checks to be cashed at Leon's arguably fulfills the overt act element. None of the evidence, however, demonstrated that Belt knew that the venture of diverting funds through use of the Leon arrangement was occurring or that he shared the criminal intent to deprive the union or its members of funds. The mere fact that Belt procured the arrangement that made the conversion possible does not support guilt without proof that Belt knew the arrangement was being used for a purpose detrimental to the union. The government's evidence did not place Belt in a position to know anything

more than that Williams was cashing checks for strikers. The bare fact that the checks were wrongfully endorsed and cashed under a system arranged by Belt does not bring Belt within the sweep of the statute.

Belt, 574 F.2d at 1240

Defendant Yeager's involvement in the case at hand is akin to Belt's.

Wherefore premises considered, the government has failed to prove a prima facie case as to each and every material allegation contained in counts 1-9 in the indictment, individually, and the Defendant Ramona Yeager is entitled to a judgment of acquittal in each count pursuant to rule 29 of the federal rules of Criminal Procedure.

Done, this the 1st day of June, 2015.

\_\_/s/JasonDarley_____
Jason Darley
354 Saint Emanuel Street
Mobile, AL 36603
251-441-7772
darleylaw@gmail.com
ATTORNEY FOR DEFENDANT

I herby certify the aforementioned was delivered via e-file delivery on June 1, 2015.

 /s/ Jason Darley_____